UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT SPIEGEL,                      )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )
                                     )   C.A. No. 16-12654-PBS
                                     )
THE COMMONWEALTH OF                  )
MASSACHUSETTS, et al.,               )
                                     )
          Defendants.                )
                                     )

**MEMORANDUM AND ORDER**

Saris, C.J.

     For the reasons set forth below, the Court grants the
plaintiff's motion for leave to proceed in forma pauperis,
directs the plaintiff to show cause why this action should not be
dismissed, and denies without prejudice the plaintiff's motion
for the appointment of pro bono counsel.

**I.   Background**

     **A.   Complaint**

     Pro se litigant Robert Spiegel brings this action in which
he complains that state court judges and employees violated his
federal rights in the course of his divorce proceedings in the
Norfolk Probate and Family Court ("Norfolk Court").  He names as
defendants the Commonwealth of Massachusetts ("Commonwealth");
the Norfolk Court; four justices of the Commonwealth's Probate
and Family Court--Chief Justice Angela Ordonez, Associate Justice
George Phelan, Associate Justice Susan Jacobs, and Associate
Justice James Menno; the Honorable Paula M. Carey, current Chief
Justice of the Commonwealth's Trial Court and former Chief

Justice of the Probate and Family Court; Patrick McDermott,
Register of the Norfolk Court; Clare Gamberoni, Assistant
Judicial Case Manager for the Norfolk Court; and, and Kim Wright,
Esq., Senior Assistant for Judicial Policy.

Spiegel characterizes the defendants' conduct as "a clear
and convincing conspiracy to delay my appeal in a colluded effort
of Fraud Upon the Court." Compl. at 4. He maintains that, as a
"DIRECT RESULT OF Fraud Upon the Court, [he] suffered permanent
injury and bodily harm [and] Diminished Physical and Emotional
capacities as a result of the manufactured evidence, missing
evidence, suppressed evidence, lack of respect for the
Constitution and the Judicial Cannons of Ethics." Id. Spiegel
brings this action under 42 U.S.C. § 1983, claiming that the
defendants denied him his rights to due process, to "protect
[him]self from emotional or Bodily Harm," and to a "fair and
impartial disposition of [his] case." Id. at 3.

While Spiegel broadly alleges that the defendants are
engaged in an ongoing fraudulent conspiracy, he describes only
one particular occurrence of misconduct. According to Spiegel,
on September 14, 2012, he suffered a violent seizure upon
learning that Judge Ordonez was going to deny him access to
certain transcripts, ignoring an order of the Supreme Judicial
Court and her own previous order.[1] Because of this seizure,

---

[1]For purposes of this memorandum and order, the Court
recites the allegations of the complaint without calling into
question their veracity. To the extent necessary, when quoting
passages of the complaint, the Court will correct small spelling
errors without identifying the change.

which was triggered by the stress caused by Judge Ordonez's
ruling, Spiegel suffered a number of broken bones and had to
undergo surgeries and physical treatment for years thereafter.
He is now disabled and has been formally diagnosed with
Posttramautic Stress Disorder "as a result of the Trauma his body
suffered because it couldn't handle the stress being brought on
by the Malicious and fraudulent acts of the Defendants being
denied protection of the Court resulting in my inability to care
for myself, make decisions in my best interest." Compl. at 5.
He further reports "the feeling of hopelessness as [he] watched
the court steal asset after asset and ignore civil rules of
evidence and procedure." Id.

In regards to relief, Spiegel asks for "disbarment of those
individuals who are found guilty to have peptrated [sic] the
fraud" and a "voided Judgement." Compl. at 5. He will also seek
monetary relief for past and future lost income, for the
reinstatement of "policies that lapsed as a result of the Courts
[sic] delays" and "[p]ayments of all fees, fines, penalties
acrued [sic]." Id. Spiegal further states that he will "seek[]
punitive damages based on the scope of the Fraud and the extent
to which the court has disabled Plaintiff physically, financially
and emotionally." Id.

    **B.    Motion for the Appointment of Counsel**

Spiegel has also filed a motion for the appointment of pro
bono counsel (Dkt. # 5). He represents therein that he is
totally disabled because of the conduct of the defendants and
that his health is rapidly declining. He asks for an opportunity

to share with the Court "what the SJC shared with [him] and why
assistance of Counsel could prevent Plaintiff any further bodily
or emotional harm from being inflicted on him at this time."
Mot. at 1. He continues, "Time is of the essence physically as
the added stress from the continued colluded efforts of Judge
Ordonez have increased my seizure activity." Id.

Spiegel provides in the motion for counsel additional
factual allegations of misconduct by the defendants. He
represents that then-Chief Justice Carey and her assistant Kim
Wright instructed the Chief Judicial Case Manager to require
Spiegel to submit the same motions four times. He also states
that other judges directly participated in this plot. Spiegel
alleges that Judge Ordonez enlisted Judge Phelan, Judge Menno,
and Judge Jacobs to assist in delaying Spiegel's access to
transcripts and preventing his appeal from moving forward.
Register McDermott and Assistant Judicial Case Manager Gamberoni
allegedly ensured that his case file was lost, "with no
accountability," four times. Mot. at 2. Spiegel further
maintains that recordings were turned off more than 300 times
during trial, exhibits were somehow lost, key testimony
disappeared, he was prevented from entering key evidence, he was
wrongfully found in contempt, and that the court "stole
thousands" from him. Id. He purports to have "hundreds of pages
of email communications with Court and other related Commonwealth
agencies regarding the allegations." Mot. at 2.

Spiegel states that he has unsuccessfully sought recourse
with the Board of Bar Overseers and the Commission on Judicial

Misconduct.  He does credit the Supreme Judicial Court with
"uphold[ing] [his] rights to due process, free from corruption
and obstruction of Justice and Discrimination," id. at 1, and for
"referr[ing] [him] to the Federal Court, citing both Subject
Matter and Personal Jurisdiction," id. at 2.  He seeks
appointment of counsel to "perfect [his] complaint, explain what
relief [he is] entitled to and for how long, and to "ensur[e]
that those parties named are all liable and do not have Judicial
Immunity."  Id. at 2.

    **C.   Other Docket Activity**

Spiegel filed in person his complaint, motion for
appointment of counsel, and motion to proceed in forma pauperis
on December 30, 2016.  At that time, the Clerk issued summonses
as to all the defendants.  The filing fee has not yet been
resolved.

**II.  Discussion**

    **A.   Motion for Leave to Proceed In Forma Pauperis**

Based on the plaintiff's financial disclosures, the Court
concludes that he has adequately shown that he is without income
or assets to pay the fee.  Accordingly, the motion for leave to
proceed in forma pauperis is GRANTED.

    **B.   Preliminary Review of the Complaint**

        **1.   Court's Authority to Screen the Complaint**

Because the plaintiff is proceeding in forma pauperis, his
complaint is subject to screening under 28 U.S.C. § 1915(e)(2).
This statute authorizes federal courts to dismiss actions in
which a plaintiff seeks to proceed without prepayment of fees if

the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B).  This determination can be made "at any time." 28 U.S.C. § 1915(e)(2).  Further, a court has an obligation to inquire <u>sua sponte</u> into its own subject matter jurisdiction, <u>see</u> <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3).  In conducting this review, the Court liberally construes the plaintiff's complaint because he is proceeding <u>pro se</u>.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

### 2.   Eleventh Amendment Immunity

All claims against the Commonwealth of Massachusetts and the Norfolk Court are subject to dismissal because these defendants enjoy immunity from suit in this Court in regards to the plaintiff's claims.  The Eleventh Amendment of the United States Constitution generally is recognized as a bar to suits in federal courts against a State, its departments and its agencies, unless the State has consented to suit or Congress has overridden the State's immunity.  <u>See</u> <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997); <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) (per curiam); <u>Hudson Sav. Bank v. Austin</u>, 479 F.3d 102, 105-06 (1st Cir. 2007). Here, the Court cannot discern any claim for relief against the Commonwealth, or the Norfolk Court (which is an arm of the state), for which the Commonwealth has waived its immunity or

6

Congress has overridden it.  The Supreme Court has ruled that
Congress, in enacting 42 U.S.C. § 1983, did not abrogate a
state's Eleventh Amendment immunity.  <u>See</u> <u>Will v. Michigan Dep't</u>
<u>of State Police</u>, 491 U.S. 58, 71 (1989) (a state is not a
"person" for purposes of 42 U.S.C. § 1983); <u>see also</u> <u>Whalen v.</u>
<u>Massachusetts Trial Ct.</u>, 397 F.3d 19, 28-30 (1st Cir. 2005)
(state trial court entitled to Eleventh Amendment immunity).

### 3.   Judicial Immunity

All claims for damages against the individual defendants
appear to be barred by the doctrine of judicial immunity.  It is
black-letter law that judges are immune "from liability for
damages for acts committed within their judicial jurisdiction . .
. even when the judge is accused of acting maliciously and
corruptly." <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967).  Although
"unfairness and injustice to a litigant may result on occasion,"
when this doctrine is applied, <u>Mireles v. Waco</u>, 502 U.S. 9, 10
(1991) (per curiam), "it is a general principle of the highest
importance to the proper administration of justice that a
judicial officer, in exercising the authority vested in him,
shall be free to act upon his own convictions, without
apprehension of personal consequences to himself," <u>id.</u> (quoting
<u>Bradley v. Fisher</u>, 80 U.S. 335, 347 (13 Wall.) (1872)).

The doctrine of judicial immunity is only overcome where the
alleged misconduct was not taken in the judge's judicial capacity
or where it was taken in complete absence of all jurisdiction.
<u>See</u> <u>Mireles</u>, 502 U.S. at 11-12.  These exceptions are extremely
narrow.  An act by a judge is "judicial" as long as it is "a

function normally performed by a judge" and the parties were
"deal[ing] with the judge in his judicial capacity." Id. at 12.
For purposes of applying judicial immunity the scope of a judge's
jurisdiction is to be "construed broadly," and "the asserted
immunity will only be overcome when the 'judge clearly lacks
jurisdiction over the subject matter." Ceparano v. Southampton
Justice Ct., 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting
Maestri v. Jutkofsky, 860 F.2d 50, 52, 53 (2d Cir. 1988).
"[A]bsolute judicial immunity is ineffaceable even in the
presence of "grave procedural errors." Nystedt v. Nigro, 700
F.3d 25, 32 (1st Cir. 2012) (quoting Stump v. Sparkman, 435 U.S.
349, 359 (1978)).

For example, in Mireles, a public defender brought suit in
federal court against a state judge, claiming that the judge
violated his Fourth Amendment rights by directing police officers
to bring him to he judge's courtroom, where he was scheduled to
appear.  The attorney represented that the officers followed
those instructions and used unnecessary violence to remove him
from another courtroom where he was waiting to appear to the
courtroom of the judge who had dispatched the officers.  See id.
at 10.  The district court granted the judge's motion to dismiss
on the ground of judicial immunity.  The Ninth Circuit reversed,
holding that the alleged actions were not taken in the judge's
judicial capacity if he requested and authorized the use of
excessive force.  See id. at 11 (citing Waco v. Baltad, 934 F.2d
214, 216 (9th Cir. 1991)).

The Supreme Court summarily reversed, ruling that the Ninth

8

Circuit had defined a "judicial" act too narrowly.  The Court explained that a function normally performed by a judge does not become "nonjudicial" simply because the particular act was a mistake or in excess of his authority.  <u>See</u> <u>id.</u> at 13.  "The relevant inquiry is the 'nature' and 'function of the act, not the 'act itself.'"  <u>Id.</u> (quoting <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978)).  In this case, the relevant question was whether "directing police officers to bring counsel in a pending case before the court" was a function normally performed by a judge, not whether directing police officers to use excessive force to bring counsel to him was a judicial function.  <u>Id.</u>  Because "[a] judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge," and the plaintiff attorney was called in for purposes of a pending case, the judge's alleged misconduct was taken in his judicial capacity.  <u>Id.</u> at 12.  The Supreme Court also held that the judge's actions were not taken in complete absence of all jurisdiction; rather it was "taken in the very aid of the judge's jurisdiction over a matter before him."  <u>Id.</u> at 13.

Similarly, Spiegel does not make any allegations--in the complaint or in the motion for counsel--that would support a reasonable conclusion that their misconduct would not be shielded by judicial immunity.  His complaint concerns judges and their staff misusing judicial power by making rulings adverse to the plaintiff and administering the case in a manner that the federally-protected rights of the plaintiff.  He does not suggest that the alleged misconduct of the state judges was not judicial

or that it was taken in the clear absence of any jurisdiction over the matter at issue.

### 4.   Injunctive Relief

The doctrine of judicial immunity does not apply to prospective injunctive relief, but the other legal principles do preclude this Court from interfering in an ongoing state court proceeding.

In an action under § 1983, the Court cannot award injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity," unless "a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  Because there has been no prior declaratory decree in this case, Spiegel is not entitled to injunctive relief on his § 1983 claims.

Further, to the extent that § 1983 does not foreclose injunctive relief, the Court will abstain from exercising jurisdiction over this action on the ground that it would interfere with ongoing proceedings in the Norfolk Court.  See Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31 (1st Cir. 2004) ("Younger [abstention] is a court-made rule of abstention built around the principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation . . . ." (citing Younger v. Harris, 401 U.S. 37, 43-45, 53-54 (1971))).

### C.   Motion for Appointment of Counsel

Although the Court "may request an attorney to represent any person unable to afford counsel," 28 U.S.C. §1915(e)(1), a civil

plaintiff lacks a constitutional right to free counsel, see
DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  The Court
does not have the funds to pay attorneys to represent plaintiffs
in civil cases, and it is very difficult for the Court to find
attorneys who will accept appointment as pro bono counsel.  To
qualify for this scarce resource, a party must be indigent and
exceptional circumstances must exist such that the denial of
counsel will result in fundamental unfairness impinging on the
party's due process rights.  See DesRosiers, 949 F.2d at 23.  To
determine whether there are exceptional circumstances sufficient
to warrant the appointment of counsel, a court must examine the
total situation, focusing on the merits of the case, the
complexity of the legal issues, and the litigant's ability to
represent himself.  See id. at 24.

    For purposes of this memorandum and order only, the Court
credits the plaintiff's representations that he is unable to
represent himself and assumes that he has sufficiently pled that
the defendants have violated his federal rights in the course of
his divorce proceedings in the Norfolk Court.  However, that the
defendants violated his rights does not necessarily mean that he
can state a claim for relief in this Court.  As explained above,
the Court cannot identify any claim that would not be precluded
by the doctrines of judicial immunity, quasi-judicial immunity or
the state's immunity under the Eleventh Amendment.  In the
absence of any indication that this case presents a scenario in
which a litigant could state a claim upon which relief could be
granted, appointing pro bono counsel would serve no purpose and

11

would be an inappropriate use of <u>pro bono</u> resources.

## III. Conclusion

1.   The motion for leave to proceed <u>in forma pauperis</u> is GRANTED.

2.   The motion for appointment of counsel is DENIED WITHOUT PREJUDICE.

3.   The Court directs the plaintiff to show good cause in writing, within thirty-five days, why this action should not be dismissed for the reasons stated above.  Failure to comply with this directive may result in dismissal of the action.

4.   The summonses are REVOKED.  Unless and until the Court orders that summonses reissue, Spiegel shall not serve the summonses, attempt to procure a waiver of service of summonses, or otherwise represent to the defendants that they are obligated to respond to the complaint.

5.   The defendants are not obligated to respond to the complaint until further order of the Court.


      SO ORDERED.


 1/11/2017              /s/ Patti B. Saris
DATE                    PATTI B. SARIS
                        CHIEF, U.S. DISTRICT JUDGE